IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KENNETH GENE WALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 2:09CV527-MEF |
| | ) |
| ANITA DENISE WALL a/k/a ANITA | ) |
| DENISE GRIFFITH, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER and RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case arises from a divorce proceeding which defendant Anita Denise Wall a/k/a Anita Denise Griffith ("Griffith") initiated against plaintiff Kenneth Gene Wall in January 2002 and which culminated in a judgment of divorce entered on May 5, 2005. Plaintiff, proceeding *pro se*, brings claims pursuant to 42 U.S.C. §§ 1983 and 1985 against: (1) his ex-wife Griffith, who worked as a court reporter in Elmore County; (2) Circuit Judge John B. Bush, who presided over the divorce proceedings until he recused himself on October 26, 2004; (3) Carol Fain Bush, Judge Bush's wife, who also worked as a court reporter in Elmore County ("Fain"); (4) Paul Hiebel, who served as a Special Master or Family Court Referee and entered an order *pendente lite* in the divorce action; and (5) Circuit Judge Sibley Reynolds, presiding judge after Judge Bush's recusal, who entered the final divorce decree and continues to exercise jurisdiction over the case. Plaintiff alleges that – because of Griffith's working relationship and/or personal relationship with the other named defendants – the defendants conspired to deprive plaintiff of his constitutional rights in connection with

the divorce proceedings.  Plaintiff sues Griffith and Fain in their individual capacities, and the remaining defendants in both their official and individual capacities.  This action is presently before the court on the motion to dismiss filed by defendants Bush, Reynolds, Hiebel, and Fain on July 1, 2009 (Doc. # 10) and the motion for judgment on the pleadings filed by defendant Griffith on August 14, 2009 (Doc. # 30).[1]  Upon consideration of the motions and the responses filed by plaintiff, the court concludes that the motions are due to be granted.

## Rooker-Feldman Doctrine

Judge Reynolds issued a final decree in the divorce action underlying this case on May 5, 2005.  (Complaint, ¶ 75; see also Doc. # 18-3).[2]  Plaintiff appealed the decision on July 15, 2005.  (Id., ¶ 82; see also Doc. # 18-4).  The Court of Civil Appeals affirmed the judgment of the Circuit Court on October 27, 2006, and the Alabama Supreme Court denied plaintiff's petition for writ of certiorari on March 9, 2007 (Docs. ## 18-6, 26-2).  Plaintiff alleges that he has been incarcerated four times on writs of arrest issued by Judge Reynolds in contempt proceedings subsequent to the judgment of divorce.  (Complaint, ¶¶ 83-99; see also Docs. ## 18-2, 18-5).[3]  Plaintiff seeks a

---

[1] Defendant Griffith appeared *pro se* and filed an answer in this action on June 16, 2009. The court has construed her later filed motion to dismiss as a motion for judgment on the pleadings. (Doc. # 31).

[2] In resolving the question of jurisdiction, the court takes judicial notice of the portions of the state court record which were obtained from the state court by the Clerk of this court and filed on the record in this action.

[3] Plaintiff claims that "[t]he Notice of Appeal filed by Plaintiff on July 15, 2005, divested the Circuit Court of Elmore County, Alabama of jurisdiction over divorce proceedings between Plaintiff and Defendant GRIFFITH." (Complaint, ¶ 97).  However, plaintiff's appeal of the divorce judgment did not deprive the trial court of jurisdiction over contempt proceedings arising from that

declaration that "the Elmore County, Alabama divorce proceedings were had in violation of Plaintiff's constitutional rights." (Complaint, p. 15). He demands injunctive relief, including an order "enjoining Defendants from further acts in relation to the Elmore County, Alabama divorce proceedings, including enjoining Defendants from any further unlawful imprisonment of Plaintiff" and "such Orders as necessary to ensure Plaintiff enjoys due process before a fair tribunal in the divorce proceedings between Plaintiff and Defendant GRIFFITH." (Id., p. 16). Plaintiff further seeks an award of compensatory damages and punitive damages. (Id.).

Under the Rooker-Feldman doctrine, "lower federal courts are precluded from exercising appellate jurisdiction of final state-court judgments." Lance v. Dennis, 546 U.S. 459, 463 (2006). The doctrine applies to "'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" Id. at 464 (citation omitted).

By order entered on July 27, 2009, the court allowed plaintiff until August 3, 2009 to file evidence that any of the state court orders and judgments referenced in plaintiff's complaint were not final on the date this action was filed. (Doc. # 20). Plaintiff filed no evidence by the deadline established by the court and did not seek an extension of time to do so.[4] Instead, he responded to the order with argument regarding the inapplicability of the Rooker-Feldman doctrine to his federal constitutional claims.[5] However, "United States district courts 'do not have jurisdiction . . . over

---

judgment. Hurley v. Hurley, 980 So.2d 985, 990 n. 7 (Ala. Civ. App. 2007).

[4] The party invoking federal subject matter jurisdiction bears the burden of proving its existence. See Sweet Pea Marine, Ltd. v. APJ Marine, Inc., 411 F.3d 1242, 1247 (11th Cir. 2005).

[5] Plaintiff's deadline to respond to the motion to dismiss filed by Bush, Hiebel, Reynolds and Fain (Doc. # 10) had previously been extended to August 3, 2009. (See Order, Doc. # 17).

challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.'" Rolleston v. Eldridge, 848 F.2d 163 (11th Cir. 1988)(quoting District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486 (1983)). Plaintiff also cites Casale v. Tillman, 558 F.3d 1258 (11th Cir. 2009) for the proposition that Rooker-Feldman is inapplicable "where a party did not have a reasonable opportunity to raise his federal claim in state proceedings." (Doc. # 25, p. 3). He argues that his constitutional claims "were never raised in any state court proceeding nor could they be argued during the state divorce proceedings." (Doc. # 25, p. 3). It is immaterial, however, whether plaintif ever *actually* raised his constitutional claims in the state court proceedings. What matters is whether the plaintiff had a "reasonable opportunity" to do so. Plaintiff cites no authority in support of his assertion that he could not raise federal constitutional claims during the state divorce proceedings. The court concludes that plaintiff was not precluded from asserting constitutional claims in the circuit court or on appeal and, thus, that he had a "reasonable opportunity" to raise his federal claims in the state court proceedings. Cf. Orr v. Orr, 440 U.S. 268 (1979)(in contempt proceedings for failure to pay alimony, former husband's challenge to constitutionality of Alabama statutes litigated in Lee County circuit court and before the Alabama Court of Civil Appeals); Snead v. Snead, 874 So.2d 568 (Ala. Civ. App. 2003)(addressing due process issue raised by father on appeal after circuit court entered post-divorce judgment against father for arrearage in child support obligation); Hampton v. Hampton, 720 So.2d 949 (Ala. Civ. App. 1998)(resolving federal constitutional challenge to circuit court's modification

---

Plaintiff filed no response other than the document he styled as a response to the court's order of July 27, 2009 (see Doc. # 25) in which he incorporates arguments advanced in support of his motion for preliminary injunction (see Docs. ## 21, 22). In his response to the motion filed by defendant Wall, plaintiff merely incorporates his earlier arguments (see Doc. # 37). The court has considered these documents in resolving the motion to dismiss.

of former husband's alimony obligation); see also Thompson v. McFatter, 951 F. Supp. 221, 224 (M.D. Ala. 1996), *affirmed*, 162 F.3d 97 (11th Cir. 1998), *cert. denied* 526 U.S. 1132 (1999)(noting that "[w]hen a plaintiff actually appeals to a state court, the Eleventh Circuit has consistently held that a reasonable opportunity [to raise constitutional claims] existed" and finding that plaintiffs who appealed custody determination had a reasonable opportunity to raise federal claims even though the opinion of the Alabama Court of Civil Appeals included no mention of federal claims).

Plaintiff is asking this court to nullify the judgment of the Elmore County Circuit Court in his divorce proceedings, and to enjoin enforcement of that judgment. However, the court lacks jurisdiction to review the divorce judgment of the state court or to stay enforcement of its terms. See Casale, 558 F.3d at 1261 ("The state court clearly had jurisdiction over Casale and Tillman's divorce, including the power to create remedies to enforce the decree. If Casale believed the state court's result was based on a legal error, the proper response was the same one open to all litigants who are unhappy with the judgment of a trial court: direct appeal. We are not a clearinghouse for Casale's overstock arguments; if he did not offer them to the state courts – or if the state courts did not buy them – he cannot unload them by attempting to sell them to us. Casale is just the sort of 'state court loser[]' the Rooker-Feldman doctrine was designed to turn aside."). Accordingly, plaintiff's claims for declaratory and injunctive relief are due to be dismissed, as to all defendants, for lack of jurisdiction.[6]

### Official Capacity § 1983/§ 1985 Claims

---

[6] In his motion for preliminary injunction, plaintiff asks the court to enjoin enforcement of the divorce decree – specifically, to enjoin defendants from imprisoning him under any contempt order issued "in the matter of Wall v[.] Wall, Elmore County case no. DR-02-00209." (Doc. # 21, p. 1). For the reasons stated above, the motion for preliminary injunction is due to be denied.

Plaintiff sues Judges Bush and Reynolds and Special Master/Court Referee Hiebel in their official capacities, seeking awards of both compensatory and punitive damages. (Complaint, ¶¶ 8, 14, 15, 16, 23, 24, 31, 37, 38). Plaintiff's claims for damages against the official capacity defendants are barred by the Eleventh Amendment. Under the Eleventh Amendment, a state is generally immune from lawsuits brought in federal court by citizens of the state. Hans v. Louisiana, 134 U.S. 1 (1890). This immunity extends to a defendant who acts as "an arm of the State." Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003), *cert. denied*, 540 U.S. 1107 (2004).[7] The State

---

[7] In determining whether a defendant is an "arm of the state" for purposes of Eleventh Amendment immunity, the court considers: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." Manders, 338 F.3d at 1309. Judges Bush and Reynolds, in their official capacities, clearly acted as an arm of the State of Alabama. See Ala. Code §§ 12-11-1, 12-11-2, 12-17-20, 12-10A-1, 12-10A-2, 12-10A-4, 12-2-30, 36-1-6.1, Const. Ala., Article VI, §§ 142, 157 (establishing circuit courts "with all the jurisdiction and powers that are conferred on the circuit court by the Constitution and laws of this state;" establishing the judicial circuits and number of circuit judges within each circuit; establishing judicial salaries and that such salaries are paid from the state treasury; establishing Court of the Judiciary with the power to discipline judges; vesting control over management of court business with the Chief Justice of the Supreme Court; and establishing liability insurance or self-insurance to pay for judgments arising out of the wrongful acts or state employees or agents and that the cost of such insurance shall be paid from funds appropriated for the operation of the various state agencies); Badillo v. Thorpe, 158 Fed. Appx. 208 (11th Cir. 2005)(concluding, after analyzing Manders factors, that a Florida state court judge and court administrator were "arms of the state for Eleventh Amendment purposes and therefore enjoy immunity from liability on [plaintiff's] § 1983 claims, both legal and equitable.").

All state circuit court personnel are employees of the State of Alabama. Ala. Code § 12-17-1. On the present motion to dismiss, the court cannot determine – as a matter of law – based on the allegations of the complaint, that Hiebel is an employee of the State of Alabama so as to be entitled to Eleventh Amendment immunity. See ARCP 53(a)(compensation of master or referee fixed by the court and charged to the parties or to a fund which is the subject matter of the action). However, there is no indication in the complaint that Hiebel is employed by any governmental entity other than the circuit court. If Hiebel is an employee of the state, he is entitled to Eleventh Amendment immunity. If he is not an employee of the circuit court but is, instead, an expert appointed by the court on a case-by-case basis to provide services to the court, he does not have an "official capacity" in which to be sued. Either way, the official capacity claims for damages against Hiebel are due to be dismissed.

of Alabama has not waived its Eleventh Amendment immunity, nor has Congress abrogated that immunity in § 1983 or § 1985 cases. Cross v. State of Alabama, 49 F.3d 1490, 1502 (11th Cir. 1995); Carr v. City of Florence, 916 F.2d 1521, 1524 (11th Cir. 1990); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989); Alabama Constitution of 1901, Article 1, § 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity."); Fincher v. State of Florida Dept. of Labor and Employment Security-Unemployment Appeals Commission, 798 F.2d 1371, 1372 (11th Cir. 1986)("We find no express congressional abrogation of the state's Eleventh Amendment immunity with respect to 42 U.S.C. § 1985 actions."). Accordingly, plaintiff's § 1983 and § 1985 claims against defendants in their official capacities are due to be dismissed pursuant to the State's Eleventh Amendment immunity.

Additionally, plaintiff contends that Judge Bush, Judge Reynolds and Special Master/Court Referee Hiebel acted out of a bias in favor of defendant Griffith, arising from their personal and professional relationships with her. Plaintiff makes no allegation that they acted pursuant to an official policy or custom. Accordingly, plaintiff fails to state a § 1983 claim against them in their official capacities. See Hafer v. Melo, 502 U.S. 21, 25 (1991)("Suits against state officials in their official capacity . . . should be treated as suits against the State. . . . Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's "policy or custom" must have played a part in the violation of federal law.'")(citations omitted).

**Individual Capacity Claims Barred by Judicial Immunity**

Plaintiff demands compensatory and punitive damages against Judges Bush and Reynolds and Special Master Heibel in their individual capacities.

> The Supreme Court has set forth a two-part test for determining when a judge is entitled to immunity from money damages liability when sued under § 1983. Simmons v. Conger, 86 F.3d 1080, 1084 (11th Cir.1996). First, the judge must have dealt with the plaintiff in his judicial capacity. Id. "[W]hether an act by a judge is a judicial one relates to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity." Mireles v. Waco, 502 U.S. 9, 112 S.Ct. 286, 288, 116 L.Ed.2d 9 (1991) (quotations and alteration omitted). Second, the judge must not have acted in the "clear absence of all jurisdiction." Simmons, 86 F.3d at 1085. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978) (quotations and citation omitted).

Jarallah v. Simmons, 191 Fed. Appx. 918, 920, 2006 WL 2242794, 1 (11th Cir. 2006). Plaintiff's allegations against Judges Bush and Reynolds all have to do with judicial acts taken by the judges in plaintiff's divorce case, and none of the alleged acts were "in the clear absence of all jurisdiction."[8]  Thus, absolute judicial immunity bars plaintiff's claim for

---

[8] Plaintiff argues that "BUSH acted in absence of any judicial authority when he exercised control over the divorce proceedings contrary to instructions from the State of Alabama Administrative Office of Courts not to hear divorce cases during the pendency of his own divorce proceedings, which were being had during the same time period as Plaintiff's underlying state court proceedings." (Doc. # 25, p. 2). However, plaintiff does not allege *in the complaint* that Judge Bush had been instructed not to hear divorce cases, nor is there any indication in the complaint concerning when such an instruction issued from the Administrative Office and whether Judge Bush continued to preside over plaintiff's case after receiving such an instruction. Thus, the facts alleged in the complaint do not support plaintiff's argument. However, even if plaintiff had made these allegations in the complaint, Judge Bush would still be entitled to judicial immunity. Judge Bush remained a circuit judge with the authority to preside over cases before the circuit court. Any orders he entered

8

money damages against Judges Bush and Reynolds.

Plaintiff also seeks judgment against defendant Paul Hiebel, whom plaintiff alleges "was a Special Master or Family Court Referee in Elmore County, Alabama." (Complaint, ¶ 31). However, "'nonjudicial officials are encompassed by a judge's absolute immunity when their official duties "have an integral relationship with the judicial process." Like judges, these officials must be acting within the scope of their authority.'" Jarallah, *supra* (citation omitted). In the complaint, plaintiff alleges that Hiebel, on February 4, 2002, "entered an Order *Pendente Lite*" awarding defendant Griffith possession of the marital home and requiring plaintiff to pay one-half of the mortgage pending resolution of the divorce proceedings. (Complaint, ¶¶ 53-55). Plaintiff contends that defendant Hiebel gave Griffith "an unfair advantage of Plaintiff during the Elmore County, Alabama divorce proceedings because of Defendant HIEBEL's professional and personal relationship with Defendant GRIFFITH." (Id., ¶ 122). Hiebel's official duties as special master or family court referee clearly had an integral relationship with the judicial process. While plaintiff contends that Hiebel was biased, he does not allege that Hiebel acted outside the scope of his authority as Special Master/Court Referee in issuing his order *pendente lite*. Hiebel is also entitled to immunity from plaintiff's

---

in plaintiff's case – even if, as plaintiff contends, Judge Bush labored under a conflict of interest and violated an instruction from the Administrative Office to refrain from presiding over a certain class of cases – were not entered "in the clear absence of all jurisdiction" so as to strip him of judicial immunity for his actions. See Wilson v. Bush, 196 Fed. Appx. 796, 799 (11th Cir. 2006)(unpublished opinion)("A judge does not act in the 'clear absence of all jurisdiction' when he acts erroneously, maliciously, or in excess of his authority, but rather only when he acts without subject-matter jurisdiction.")(citing Dykes v. Hosemann, 776 F.2d 942, 947-48 (11th Cir. 1985)).

claims for damages.  See Wilson, 196 Fed. Appx. at 799 ("[W]e readily conclude that [judicial immunity] also extends to defendant Garland for the orders he entered as a special master in the state quiet-title action.  When he entered those orders, Garland was performing a judicial function and he is entitled to immunity for those actions.")(citations omitted).  Accordingly, plaintiff may not proceed on his claims for damages against Judge Bush, Judge Reynolds or Paul Hiebel in their individual capacities.

### Claims for Damages Against Fain and Griffith

*§ 1985 Claims*

Plaintiff's sole reference to 42 U.S.C. § 1985 is in the first sentence of the complaint.  The allegations of the complaint indicate that plaintiff seeks to invoke the second clause of § 1985(2), which pertains to conspiracies to interfere with the administration of justice in state courts, and/or the first clause of § 1985(3),[9] which prohibits conspiracies to deprive a person of equal protection of the laws or equal privileges and immunities under the laws.  Both of these causes of actions require that the plaintiff allege and prove "racial, or perhaps otherwise class-based, invidiously discriminatory animus."  Griffin v. Breckenridge, 403 U.S. 88, 102 (1971); see also Kush v. Rutledge, 460 U.S. 719 (1983).  Plaintiff has affirmatively alleged that defendants conspired "to provide to Defendant GRIFFITH an unfair advantage over Plaintiff during the Elmore County, Alabama divorce proceedings" with the intention to deny him a fair and impartial tribunal because of Griffith's "professional and personal relationship" with the defendants. (Complaint, ¶¶ 112-122). Plaintiff does not contend that the defendants' alleged conspiracy is motivated by class-based

---

[9] The remaining clauses of 42 U.S.C. § 1985 are not implicated by the facts alleged in the complaint.

animus; rather, he contends that they were motivated by a desire to give Griffith an advantage in the divorce proceedings. Accordingly, plaintiff fails to state § 1985 claims against Fain and Griffith, and these claims are due to be dismissed.

## *§ 1983 Claims*

Fain and Griffith argue that plaintiff's § 1983 claims are barred by the statute of limitations.[10] Plaintiff alleges that Fain and Griffith had a "close acquaintance,"[11] that they both worked as court reporters in Elmore County, and that Fain had an extramarital relationship with and married Judge Bush during the time period relevant to plaintiff's lawsuit. For purposes of analyzing the statute of limitations defense, the court assumes – without deciding – that these allegations are sufficient to support a finding of conspiracy between Fain, Griffith, and Judge Bush. Plaintiff alleges that Fain and Griffith had "both a professional and personal contact" before January 2002 and that plaintiff sought Judge Bush's recusal from the divorce action based on Judge Bush's personal and professional relationship with Griffith. (Complaint, ¶¶ 52, 56-57). Plaintiff further alleges that Judge Bush recused himself from plaintiff's divorce proceedings on October 26, 2004. (Complaint,

---

[10] Griffith first raised the statute of limitations defense in her motion (Doc. # 30), which was filed after her answer. In his response to Griffith's motion, plaintiff does not contend that the defense has been waived but, instead, argues the statute of limitations defense on its merits. Plaintiff's claims against Griffith are based on her alleged conspiracy with the other defendants to violate plaintiff's constitutional rights. The represented defendants raised the statute of limitations defense in their motion to dismiss. Thus, plaintiff was on notice of the defense and has not been prejudiced by Griffith's failure to raise it in her answer. Accordingly, the court may consider Griffith's statute of limitations defense. See Bergquist v. Fidelity Information Services, Inc., 2006 WL 1813896, **3 (11th Cir. Jun. 30, 2006)(unpublished opinion)(finding no error in trial court's consideration of affirmative defense, where the plaintiff was not prejudiced by the defendant's failure to raise it in the answer).

[11] Griffith argues that this is untrue, and she makes other factual allegations which are not relevant to the motion. (See Doc. # 30, ¶¶ 13-18). The court has not considered these allegations in resolving Griffith's motion for judgment on the pleadings.

11

¶ 67).  While plaintiff alleges that Judge Bush gave Griffith an unfair advantage in the divorce action because of his personal and professional relationships with Fain and Griffith (id., ¶¶119-120), he does not allege that Judge Bush took any action in plaintiff's divorce proceeding or in subsequent enforcement proceedings after his recusal.  (See Complaint).  To establish a civil conspiracy under § 1983, the plaintiff must demonstrate an underlying constitutional violation.  Because the constitutional violation – and not the agreement – is the basis for liability, the statute of limitations runs separately for each unlawful overt act in furtherance of the conspiracy.  Grider v. City of Auburn, ___ F.Supp.2d ____, 2009 WL 1759588, 18-20 (M.D. Ala. Jun. 18, 2009).  To the extent plaintiff alleges that Judge Bush gave Griffith preferential treatment in the divorce proceedings in violation of plaintiff's substantive and procedural due process rights, the violation occurred before October 2004.  It appears from the allegations of the complaint that plaintiff was then aware of both the alleged injury being inflicted upon him and of the identity of those inflicting the injury. The statute of limitations for plaintiff's § 1983 claims is two years.  See Lufkin v. McCallum, 956 F.2d 1104 (11th Cir. 1992); Ala. Code, §6-2-38(l).  Plaintiff filed the present action on June 5, 2009, nearly five years after Judge Bush's recusal.  Accordingly, plaintiff's § 1983 claims against Fain and Griffith arising from Judge Bush's actions in the divorce proceeding are barred by the statute of limitations.

The same is true with regard to the alleged constitutional violation by Special Master/Court Referee Hiebel.  Aside from plaintiff's conclusory assertions of conspiracy, the only action alleged to have been taken by Hiebel is the issuance of an order *pendente lite* on February 4, 2002. (Complaint, ¶¶ 53-55, 101).  Plaintiff maintains that the order awarded Griffith possession of the marital home and required plaintiff to pay one-half of the mortgage, and that the defendants

"intended to deny Plaintiff a fair and impartial tribunal during the hearing conducted on Defendant GRIFFITH's *Pendente Lite* Motion." (Id.). Thus, it affirmatively appears from the complaint that plaintiff's claims against Fain and Griffith arising from the alleged constitutional violation by Hiebel in issuing the order *pendente lite* are also barred by the two-year statute of limitations.

Plaintiff further contends that Judge Reynolds "gave Defendant GRIFFITH an unfair advantage over Plaintiff during the Elmore County, Alabama divorce proceedings because of his professional and personal relationship with Defendant GRIFFITH," that "Defendant FAIN used her professional and personal relationship with Defendant REYNOLDS to provide Defendant GRIFFITH an unfair advantage over Plaintiff during the Elmore County, Alabama divorce proceedings," and that Griffith used her personal and professional relationships with both Fain and Reynolds "to gain an unfair advantage over Plaintiff during the Elmore County, Alabama, divorce proceedings." (Complaint, ¶¶ 112, 114, 117, 121). To the extent plaintiff's claims arise from alleged constitutional violations by Judge Reynolds during the divorce proceedings leading up to and including entry the judgment of divorce on May 5, 2005 (see Complaint, ¶ 75) – more than four years before plaintiff commenced this action – they are barred by the two-year statute of limitations, as are the claims arising from Judge Reynolds' alleged violation of plaintiff's constitutional rights in the contempt proceedings resulting in plaintiff's incarceration in September and October of 2005 (see id., ¶¶ 83-95).

Plaintiff also alleges an incarceration in 2009, and – without specifying any additional dates – that he has "been incarcerated in the Elmore County, Alabama jail based upon a writ of arrest issued by Defendant REYNOLDS at least four times." (Id., ¶¶ 96-99). The statute of limitations does not bar any claims relating to constitutional violations occurring in 2009, and it is not apparent

13

from the face of the complaint when the one or more "undated" incarcerations occurred. While these claims are not subject to dismissal on the present motion on the basis of the statute of limitations, they are nevertheless due to be dismissed without prejudice.

"For purposes of 42 U.S.C. § 1983, the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons." Harvey v. Harvey, 949 F.2d 1127, 1133 (11th Cir. 1992)(citation omitted). Although plaintiff refers to Fain's "personal" relationship with these state actors, the only specific facts he has alleged to demonstrate her involvement in a conspiracy are that: (1) Fain worked as a court reporter in Elmore County, where Reynolds served as a Circuit Judge, and that she had reported cases before him; (2) Fain had an "extramarital affair" with and subsequently married Judge Bush, also an Elmore County Circuit Judge; and (3) Fain had close relationship with Griffith. As to defendant Griffith, plaintiff alleges that she had: (1) a close acquaintance with Fain and (2) employment as a court reporter in Elmore County, where she served in cases before Reynolds, Bush and Hiebel. "When a plaintiff in a section 1983 action attempts to assert the necessary 'state action' by implicating state officials or judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present *facts tending to show agreement and concerted action*." Hunt v. Bennett, 17 F.3d 1263, 1268 (10th Cir. 1994)(citation omitted)(emphasis added). Even assuming that plaintiff's factual allegations could raise an inference of bias, they fall far short of being sufficient to permit an inference that Judge Reynolds reached an agreement with Fain or Griffith to violate the plaintiff's constitutional

14

rights in the contempt proceedings.  Thus, plaintiff's allegations do not attribute state action to Fain or Griffith sufficiently to subject them to liability under 42 U.S.C. § 1983 for the alleged violations of plaintiff's constitutional rights by defendant Reynolds.

## CONCLUSION

For good cause, it is

ORDERED that *pro se* defendant Griffith's motion to dismiss (Doc. # 30), which was previously construed as a motion for judgment on the pleadings, is further construed to include a motion for leave to amend her answer to include a statute of limitations defense, and that the motion for leave to amend the answer is GRANTED.

Additionally, it is the RECOMMENDATION of the Magistrate Judge that the motion to dismiss (Doc. # 10) and the motion for judgment on the pleadings (Doc. # 30) be GRANTED and that: (1) plaintiff's claims for declaratory and injunctive relief be DISMISSED for lack of jurisdiction pursuant to the Rooker-Feldman doctrine; (2) plaintiff's claims for damages against Judges Bush and Reynolds and Special Master/Court Referee Hiebel be DISMISSED with prejudice pursuant to their absolute judicial immunity; (3) plaintiff's claims for damages against defendants Griffith and Fain – to the extent they arise from the actions taken by Judge Bush and Special Master/Court Referee Hiebel in plaintiff's divorce action and Judge Reynolds' actions in both the underlying divorce action and in the contempt proceedings conducted in 2005 – be DISMISSED with prejudice as they are barred by the statute of limitations; and (4) that plaintiff's claims against defendants Griffith and Fain – to the extent they arise from Judge Reynolds' actions in causing plaintiff to be arrested within the two years preceding the commencement of this action be DISMISSED without prejudice due to plaintiff's failure to allege facts sufficient to support a finding

of "state action" on the part of either Griffith or Fain.

The Magistrate Judge further RECOMMENDS that plaintiff's motion for preliminary injunction be DENIED.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties to this action. The parties are DIRECTED to file any objections to this Recommendation on or before September 10, 2009. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. Resolution Trust Co. V. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

Done, this 28th day of August, 2009..

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE